IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA        :

v.                              :        CRIMINAL NO. 25-418

AIDAN GETCHIUS                  :

GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by its attorneys David Metcalf, United States Attorney for the Eastern District of Pennsylvania, and Josh A. Davison, Assistant United States Attorney, respectfully files this sentencing memorandum regarding defendant Aidan Getchius.

I.      INTRODUCTION

Aidan Getchius was charged in a one count information with conveying false information and hoaxes, in violation of 18 U.S.C. § 1038(a)(1), arising from the defendant communicating a bomb hoax to the United States Tennis Association ("USTA") on September 2, 2024 about a bomb that was purportedly located in the Louis Armstrong Stadium at the Billie Jean King National Tennis Center in Queens, New York. Pursuant to a plea agreement entered into under Rule 11 of Federal Rules of Criminal Procedure, the defendant entered a plea of guilty to the information on September 18, 2025. For the reasons provided below, the government asks the Court to impose a sentence of a term of probation, absent any basis for a sentence addressed in the supplemental sealed attachment to this sentencing memorandum.

II.     FACTS OF THE CASE

On September 2, 2024 at 12:12 p.m., the United States Tennis Association ("USTA") was sent a threat via direct message on X (formerly known as Twitter), stating that "I'm inside Louis Armstrong with a bomb that will go off at 1 pm est." At the time, a Round of 16 (quarterfinals) match in the United States Open Women's division was in progress between K.M.

and J.P. in the Louis Armstrong Stadium at the USTA Billie Jean King National Tennis Center in Queens, New York. The message was sent from the X profile "GetchiSoto." The stadium was not evacuated, but the New York Police Department conducted a sweep for explosive devices.

The direct message threat was sent approximately six to seven minutes prior to the end of the match between K.M. and J.P. J.P. had just had her serve broken and was in danger of losing the match. Thus, the timing of the bomb hoax coincided with K.M. being on the verge of winning the match.

The X account of "GetchiSoto" was created and operated by defendant Aidan Getchius. The defendant had usernames and profiles on other platforms such as Instagram, Facebook, Reddit, Kik, Playstation, XBox, Fortnite, and TikTok, using "GetchiSoto" or a similar configuration using his last name, his date of birth and the last name of J.S., a Major League Baseball player. On many of these platforms, Getchius, the account holder, posted images and messages conveying that he was a fan of J.S. In addition, some of the activity on these social media accounts operated by the defendant was linked to sports betting platforms.

The defendant sent the threat via direct message on X on September 2, 2024 while he was located in Lancaster County in the Eastern District of Pennsylvania. While he claimed in the direct message to have a bomb in Louis Armstrong stadium, he knew he did not possess an explosive device in or near the stadium and was merely seeking to disrupt the women's match in progress.

## III.     <u>LEGAL STANDARD</u>

A sentencing court follows a two-step process, first calculating the range under the Sentencing Guidelines, and then considering that range along with all pertinent 18 U.S.C. § 3553(a) factors in determining the appropriate sentence. See USSG § 1B1.1 (Nov. 1, 2025).

At the second step of the sentencing process, "[t]he record must demonstrate the trial court gave meaningful consideration to the ' 3553(a) factors. . . . [A] rote statement of the ' 3553(a) factors should not suffice if at sentencing either the defendant or the prosecution properly raises 'a ground of recognized legal merit (provided it has a factual basis)' and the court fails to address it." *United States v. Cooper*, 437 F.3d 324, 329-30 (3d Cir. 2006) (citations omitted). See also *Rita v. United States,* 551 U.S. 338, 356 (2007) ("The sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority."); *United States v. Flores-Mejia*, 759 F.3d 253, 256 (3d Cir. 2014) (en banc) ("Failure to give 'meaningful consideration' to any such argument renders a sentence procedurally unreasonable which, when appealed, generally requires a remand for resentencing.").

The government explains below its view of the proper consideration in this case of the advisory guideline range and of the Section 3553(a) factors.

## IV. SENTENCING CALCULATION

### A. Statutory Penalties

The Court may impose the following statutory maximum penalties:

Count One of the information (conveying false information and hoaxes): five years' imprisonment, a three-year term of supervised release, a $250,000 fine, and a $100 special assessment.

### B. Sentencing Guidelines Calculation

The presentence report correctly calculates the defendant's sentencing guideline range as 6-12 months' imprisonment.   The base offense level is 12, pursuant to USSG §2A6.1 and

the defendant has demonstrated acceptance of responsibility for the instant offense, making him eligible for a two-level downward adjustment, pursuant to USSG §3E1.1(a), lowering his total offense level to 10.  The defendant has no prior criminal history placing him in criminal history category I.

## V.  GOVERNMENT'S RECOMMENDATIONS CONCERNING SENTENCING

### B.  Sentencing Factors

The Court must consider all of the sentencing considerations set forth in § 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

### C.  Application

The relevant § 3553(a) factors will be discussed in turn.

#### 1.  The Nature and Circumstances of the Offense

The purpose of this crime was to disrupt an event involving tens of thousands of people through terror and intimidation for the defendant's own benefit. In this case, the defendant, Aidan Getchius, sought to alter the course of a professional tennis match at the United States

Open, in order to avoid losing a sports bet. By sending a direct electronic message to the United States Tennis Association, that there was a bomb in Louis Armstrong Stadium in Queens, New York, Getchius was attempting to halt the match at a point in time when the player, for whom he had staked his online bet, was on the verge of being defeated. The fact that one person, through one impulsive and sinister text, can so easily inflict potential mass scale fear, disruption and damage demonstrates the seriousness of this case.

Bomb hoaxes, swatting and the conveying of other false reports have become far too prevalent in our society. Unfortunately, they cannot simply be ignored and the hoaxes create disruption, emotional distress, inconvenience and expense. As related by the Director of Security for the U.S. Open Championship, in this case, an operational response involving law enforcement, emergency personnel, and explosive-detection units was required. Victim Impact Statement, P.1. Getchius was fortunate that a decision was made not to evacuate the venue and the adjacent grounds and that no one was hurt or significantly adversely impacted from his hoax. Otherwise, the scale of the damage he caused would be immensely greater. That is not always the case. It is important to consider that it was Getchius' intent to achieve a total disruption to the approximately 18,000 spectators, athletes, and staff, present that day. *Ibid*.

### 2. The History and Characteristics of the Defendant

This case represents the only significant blemish in this defendant's young life. The defendant has led an otherwise law-abiding life in which he has been a conscientious student and a reliable employee. This aberration from the defendant's normal conduct was heavily influenced by his sports gambling. This addictive and costly habit led Getchius to lash out, lose control, and commit a reckless and thoughtless act with little, to no appreciation of the consequences.

This criminal case, involving an online communication of a deadly threat, represented an anomaly in Getchius' behavior, but highlights the powerful influence of gambling, especially on youth. Getchuis stated that he began placing bets on online sports betting platforms when he was as young as approximately 18 years-old. PSR ¶ 45. For a teenager with limited funds, Getchius, in 2024, developed a gambling problem, placing bets in amounts beyond his means. *Ibid.* Desperate to reverse the course of a losing bet on a women's tennis match, Getchius sent the bomb threat to the USTA on September 2, 2024, demonstrating the extent to which sports gambling had a hold on him.

After law enforcement intervened and approached the defendant concerning his online threat, Getchius responded positively, accepted responsibility, and turned a corner. He is now attending college and overcoming challenges with the help of some support and treatment. PSR ¶ 44-45, 74-77.

### 3.    The Need for Sentence Imposed to Reflect Seriousness of the Offense, Promote Respect for Law, and Provide Just Punishment

There is a need to impose a sentence that reflects the seriousness of this offense, promotes respect the law, and provides just punishment. The government believes that the recommended sentence of a term of probation in this particular case for this particular defendant furthers these goals of sentencing.

### 4.    The Need for Adequate Deterrence and Protection of Public

The need to deter this type of crime is great.  As mentioned, communicating bomb hoaxes and similar threats to mass audiences can have broad reaching consequences. Individuals must be deterred from this type of behavior especially since it has the capacity to cause panic, traumatize and intimidate individuals, waste valuable resources, disrupt and discourage mass gatherings and negatively impact a large segment of society.

The targeting of mass-transit, stadiums, schools, campuses, religious institutions and other places of gathering with threats and hoaxes is far too common and becoming a regular aspect of living. This is unacceptable. These crimes are easily accomplished, frequently with anonymity, and have broad impact. Simple forms of threatnening communications can have the immediate effect of inflicting terror, intimidation, disruption, and at the very least, inconvenience. This form of behavior must be discouraged.

While the objectives of specific deterrence can be achieved through this prosecution, the greater need to deter others who may consider perpetrating hoaxes is critical. This is especially true as our society faces a growing number of threats that impact large segments of the public. There are an increasing number of individuals who participate in sports betting and prediction markets and this case represents an example of how a gambling addict can easily cross the line into criminality when consumed with desperation to win a bet.

### 5. The Need to Provide the Defendant with Training, Medical Care or Correctional Treatment

As reflected in Appendix A of the PSR, there is a demonstrated need to adjust the sentence in order to provide the defendant with needed mental health and gambling treatment.

### 6. The Need to Avoid Unwarranted Sentence Disparities Among Similarly Situated Defendants

Reference to the sentencing guidelines, while carefully considering the 3553(a) factors particularly relevant to an individual defendant, is the best available means of preventing the disfavored result of unwarranted sentencing disparities. Here, the recommended sentence, that falls slightly below the sentencing guidelines, takes into account, as detailed above, the individual circumstances of this defendant, including his history and characteristics and the need to avoid disparate sentences.

## VI.    <u>CONCLUSION</u>

For these reasons and the reasons stated in the sealed supplement, the government

believes that the recommended sentence is appropriate in this case.

Respectfully submitted,

DAVID METCALF
United States Attorney


/s/ Josh A. Davison
JOSH A. DAVISON
Assistant United States Attorney


Date:  May 14, 2026

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 14, 2026, I electronically mailed the foregoing document to

Jeremy Isard, Esq, counsel for the defendant.

/s/ Josh A. Davison
JOSH A. DAVISON
Assistant United States Attorney